failed to sustain by proof the averment that she was thrown by reason of her foot slipping into the hole.   The party who claims damages by reason of the negligent act of another must show, not only that the other party was negligent but that his injuries are the result of such negligence.   The complaining party has no cause of action unless the wrongdoer's act produces the injuries complained of."

Judgment affirmed.

---

# William White, Jr., Appellant, v. Carnegie Steel Company.

*Contracts—Options—Expiration of option—Sales—Purchase of property by third person—Optionee's claim—Nonsuit.*

The owner of an option to purchase a mining concession offered the property to a manufacturing company.   The manufacturing company agreed to pay the owner of the option a certain price, provided it exercised the option.   The option was not exercised, and several months after the expiration thereof, the owner of the property sold it direct to the manufacturing company.   In an action by the optionee to recover from the manufacturing company the price stipulated in the agreement the trial judge entered a compulsory nonsuit which the court in banc subsequently refused to take off.   *Held,* no error.

Argued May 15, 1916.   Appeal, No. 78, Oct. T., 1916, by plaintiff, from final order of C. P. Allegheny Co., Third Term, 1908, No. 992, refusing to take off nonsuit in case of William White, Jr., v. Carnegie Steel Company. Before BROWN, C. J., MESTREZAT, MOSCHZISKER, FRAZER and WALLING, JJ.   Affirmed.

Assumpsit on a contract.

The facts appear in the following opinion of MACFARLANE, J., sur plaintiff's motioned to take off nonsuit:

Burn & Company were the owners of a mining concession in India and gave plaintiff the following option:

"12th May, 1905.

"Wm. White, Jr., Esq.,
    "Grand Hotel,
        "Calcutta.

"Dear Sir:

"With reference to our concession from Government for manganese ore in villages Gudma, Ukwa, & Samnanpur, in the district of Balaghat in the Central Provinces of India, we hereby grant you an option to purchase this Lease for the sum of Twenty thousand pounds (£20,000.00) if you are in position to do so yourself or for your principals within three months from date."

From time to time the option was extended to August 3, 1906. On February 26, 1906, the plaintiff assigned the option to the defendant by the writing attached to the statement in this case as Exhibit "A," in substance as follows: In consideration of $10,000 then paid to him, he assigned the option for the price of 20,000 pounds, payable upon the completion of the transfer of the lease and concession from Burn & Company; White to do all acts necessary to accept the option and complete the purchase if desired. If the conditions of the lease and the concession should prove to be other than recited in this assignment and, for that reason, not acceptable, or if Burn & Company refused or neglected to transfer the lease and concession, the $10,000 received by White to be repaid, but in the case of acceptance of the option the defendant to pay White the further sum of $90,000. For this sum the action is brought.

In his statement, plaintiff alleged that defendant's agent (Kellerschon), sent to examine the property, sought to enter into negotiations with Burn & Company direct and induce them to forfeit plaintiff's option or otherwise get rid of it, assuring them that better terms could be made with it out of the way than if plaintiff had to be considered, and assured Burn & Company that he would put up a forfeit that the defendant company would take the lease if Burn & Company would not re-

new or extend plaintiff's option; that this agent had made the necessary explorations to assure himself of the character of the property and that reports made by the defendant's officers to the plaintiff that the property was not suitable for their purpose were not true in fact; that defendant wilfully permitted the matter to drag along until plaintiff's option had lapsed in order that defendant might acquire the property without paying plaintiff the agreed price; and that defendant purchased the concession from Burn & Company in March, 1907, for £12,-000 and a royalty; that the company accepted the assignment of the concession from Burn & Company, and under their agreement were liable, and that plaintiff's services in bringing the property to defendant's notice and furnishing it with maps, etc., were worth $90,000.

Construing the evidence in the way most favorable to the plaintiff, and stripped of details and irrelevant matter, the plaintiff's case is as follows:

Kellerschon, an expert sent by the company to examine the property, while in India, endeavored to induce Burn & Company not to extend White's option and assured them that at its termination he would make them an offer on behalf of the Carnegie company. To this Burn & Company replied by letter April 5, 1906, that at the expiration of the option they were not prepared to treat with the company for a new option through Kellerschon or any one else but White, as they felt morally bound to him. Kellerschon also attempted to purchase the interest of one of the persons interested in Burn & Company, stating that by this means an extension of White's option would be prevented.

For none of these acts did he have any authority.

About June, 1906, he reported to the company, advising against the purchase, and on June 12th, it notified the plaintiff that it would not purchase the property. On June 27, 1906, and on July 3, 1906, White made propositions varying the terms of purchase, which were both declined. On June 26, 1906, Galey cabled Kel-

lerschon, the agent sent to examine the property, as follows: "You are authorized by us to offer Burn twelve thousand pounds." On August 16, 1906, after a conversation with White, Galey, vice-president of the company, wrote to White, "I beg to advise we have instructed our representatives in India to make purchase direct from Burn & Company of the manganese property brought to us by.you, representing the Samnanpur, Ukwa and Gudma concessions, and in the event of such purchase being consummated and the properties absolutely secured by us, we propose to carry out with you in agreement the last proposition contained in your letter dated July 3, 1906, to Mr. D. G. Kerr, which reads as follows:

" 'If the Carnegie Steel Company is not convinced and operate the property, I am to receive at the rate of 20 cents per ton on each ton of ore shipped by Carnegie Steel Company from said property beyond 500,000 tons until I receive a total compensation of £20,000.' "

This was agreed to by White, but the following day, at his instance it was agreed that "all agreements be considered off." He made several other propositions with terms of payment based upon shipments of ore, but none was accepted.

Burn & Company had extended White's option to September 14, 1906. After that date they gave an option to another person. After its expiration, in December, 1906, Kellerschon made an offer of £12,000, and a royalty to Burn & Company that was accepted, and on March 2, 1907, the concession was assigned to the Carnegie company and £12,000 paid.

The position of plaintiff is that the defendant exercised the option within the terms of the agreement, but if it be not so, the interference by the agent of the Carnegie company in preventing White from getting a further extension of his option, prevents the company from pleading their own failure to acquire the property in the period covered by White's option as a reason why they should not pay the purchase-price agreed to in their con-

tract, inasmuch as it appears that within the period of the option they had made up their minds to acquire the property and offered £12,000, the sum for which they subsequently acquired it.

No doubt a principal is bound by the unauthorized act of his agent of which he receives the benefit, but, in the first place, Kellerschon did not in fact buy the interest of the partner in Burn & Company and, in the second place, it is not averred in the statement that Kellerschon's efforts to prevent the extension of the option had any effect and, in fact, it was extended. The subsequent purchase by the company was not for £12,000, the amount named in Galey's cablegram.

White's claim is not for a commission. The defendant paid him $10,000 for the privilege of buying the concession before August 3, 1906, for $100,000, to be paid Burn & Company and $90,000 to be paid to White. It had a right to influence the owners not to extend the option and a right to later buy the property for $60,000 and a royalty.

Patterson v. Meyerhofer, 204 N. Y. 96, has no application. The vendee, under an article of agreement, purchased the property at a foreclosure sale at which the vendor was a bidder, thereby preventing him from carrying out his agreement and was liable for the purchase-price, not on account of a relation of trust, but for the reason that there was a breach of the implied undertaking not to prevent the vendor from carrying out his agreement. There was no interference with White performing his contract. After his option was extended, and before its expiration, with full knowledge of the authority, given Kellerschon to offer £12,000 (an offer never accepted), all agreements between the parties were terminated.

There was no relation between it and White other than vendor and vendee and, while a vendee may not destroy the vendor's title to his own advantage, the defendant did nothing of the kind. White had no title, interest or

right after September 14, 1906. He had merely a hope and the destruction of a hope is not a breach of contract or a basis for an award of damages.

The defendant's engagement was to pay White the additional $90,000, if it exercised the option. It did not do so and is not liable.

There was no evidence of the value of White's services and that branch of the case does not require discussion.

Subsequently MACFARLANE, J., filed the following supplemental opinion:

"Counsel for the plaintiff has called my attention to four statements in the opinion on motion to take off nonsuit. Although this is not a finding of fact, it is proper to correct or explain them.

1. "For none of these acts did he (Kellerschon) have any authority." I referred to authorization not ratification. I cannot find any testimony that he was authorized to do anything but examine the property and report on it. In May, 1906, White told Kerr (an officer of the defendant), that he had heard that Kellerschon had suggested (to Burn & Co.,) not to renew the option, that he would do business in the name of the Carnegie company direct and Kerr assured White that everything was perfectly proper. A jury might find knowledge from this but not authorization.

2. "After that date they gave an option to another person. After its expiration, in December, 1906, Kellerschon made an offer of £12,000 and a royalty to Burn & Company that was accepted." Interrogatories 25th and 26th and answers are the basis for this statement which is too broad. It should be that after giving the option to White, an option was given to one Macdonald over the name of Burn & Co., signed by Dutt, a member of Burn & Co., owning a fixed share in the concession. After its termination the property was sold to defendant.

3. "The subsequent purchase by the company was not for £12,000, the amount named in Gayley's cablegram."

It was for £12,000, and ten pence per ton royalty after half a million tons had been removed within ten years.

4. "After his option was extended, and before its expiration, with full knowledge of the authority given Kellerschon to offer £12,000 (an offer never accepted), all agreements between the parties were terminated." There is no evidence that an offer of £12,000 "flat" was ever made. Kellerschon's telegram of February 1, 1907, refers to an offer of Burn & Co., and it seems to have been an error to say that he made an offer of £12,000 and a royalty in December, 1906."

The trial judge entered a compulsory nonsuit which the court in banc subsequently refused to take off. Plaintiff appealed.

*Error assigned* was in refusing to take off the nonsuit.

*Thomas Patterson*, of *Patterson, Crawford, Miller & Arensberg*, for appellant.

*Edwin W. Smith*, with him *L. H. Burnett & Reed, Smith, Shaw & Beal*, for appellee.

PER CURIAM, July 1, 1916:
This judgment is affirmed on the opinion of the learned court below overruling the motion to take off the nonsuit.

---

# Wright's Estate.

*Wills—Specific devises—Residuary clauses—Construction — Intention.*

A testator bequeathed his residuary estate in trust for the benefit of his daughter for her life and directed that upon her death "said trust to go to and vest in her child or children who shall then be living and the issue of any one or more who may have deceased, their......heirs, etc., freed from all trusts, the issue of any deceased child or children, however, if more than one to take only such